UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO LOPEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VELOCITY TRANSPORT LLC, et al.,<br><br>Defendants. | Case No.:  22-cv-1414-RSH-KSC<br><br>**ORDER ON FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, INCENTIVE AWARD, AND SETTLEMENT ADMINISTRATION EXPENSES**<br><br>[ECF Nos. 49, 50] |

Before the Court is an unopposed motion for final approval of class action settlement [ECF No. 49] and motion for attorneys' fees, costs, an incentive award, and settlement administration expenses [ECF No. 50], filed by Plaintiff Francisco Lopez (the "Motions"). A final approval hearing was held on September 19, 2024. ECF No. 53. For the reasons below, the Court grants as modified Plaintiff's Motions.

## I. BACKGROUND

### A. Factual Background

The instant case is a wage and hour class action and California Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.*, representative action filed against

Defendants Velocity Transport, LLC ("Velocity"), Amazon.com, LLC, and Amazon Logistics, Inc. (the "Amazon Defendants").

Defendant Velocity is a former delivery service partner to the Amazon Defendants and "provided local transportation and delivery services for packages" from Amazon warehouses to Amazon customers. Declaration of David A. Huch ("Huch Decl.," ECF No. 49-2) ¶ 5. Plaintiff was employed by Velocity in San Diego County as a non-exempt Delivery Associate from November 2019 to November 2021. *Id.*; ECF No. 42 ¶ 8. The Second Amended Complaint ("SAC"), the operative complaint, sets forth two main theories of liability: (1) that Defendants failed to pay Plaintiff and other similarly situated employees for the actual number of hours worked, regular and overtime; and (2) that Defendants required employees to work during meal and rest periods during the Class Period. ECF No. 42 ¶¶ 2–3; 49-1 at 22.[1]

### B.    Procedural History

On March 17, 2022, Plaintiff initiated the instant putative class action against Defendants in California Superior Court. ECF No. 1-3 at 35–60. On March 24, 2022, Plaintiff filed a First Amended Complaint ("FAC") adding a claim under PAGA. *Id.* at 1–34. Velocity subsequently removed the action to this Court under the Class Action Fairness Act ("CAFA"). ECF No. 1 at 7.

Following extensive informal and formal discovery, the Parties attended a full day mediation via videoconference with mediator Scott S. Markus, Esq., and ultimately accepted a mediator's proposal. Huch Decl. ¶¶ 15–19. On November 13, 2023, the Parties filed a notice of settlement with the Court. ECF No. 35. On February 2, 2024, the Parties filed a joint motion for leave to file a Second Amended Complaint ("SAC") to further the Parties' proposed settlement, seeking to add a claim pursuant to California Labor Code § 2810.3, alleging that the Amazon Defendants are "client employers" liable

---

[1]    All citations to electronic case filing ("ECF") entries refer to the ECF-generated page numbers.

for "labor contractor" Velocity's failure to pay wages to Plaintiff and the proposed class. ECF No. 40 at 4. The Court granted the Parties' motion for leave and Plaintiff subsequently filed the SAC. ECF Nos. 41, 42.

The SAC asserts claims for: (1) failure to pay overtime (Cal. Lab. Code §§ 510, 1194); (2) failure to pay regular pay/minimum wages (Cal. Lab. Code §§ 1182.11, 1182.12, 1194, 1194.2, 1197, 1197.1; Cal. Code Regs. tit. 8, § 11090); (3) failure to provide meal periods, or compensation in lieu thereof (Cal. Lab. Code §§ 226.7, 512); (4) failure to authorize and permit rest periods, or compensation in lieu thereof (Cal. Lab. Code § 226.7); (5) failure to provide accurate itemized wage statements (Cal. Lab. Code §§ 226, 226.3); (6) failure to pay compensation when due at time of separation of employment (Cal. Lab. Code §§ 201–203); (7) sharing of liability with a labor contractor (Cal. Lab. Code § 2810.3); (8) unlawful and unfair business practices (Cal. Bus. & Prof. Code § 17200 *et seq*.); and (9) civil penalties under PAGA (Cal. Lab. Code § 2698 *et seq.*). FAC ¶¶ 81–172.

On April 18, 2024, the Court granted Plaintiff's unopposed preliminary approval motion. ECF No. 48. The Court determined that, for settlement purposes, the prerequisites for a class action under Federal Rule of Civil Procedure 23(a) were satisfied and this action was maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). *Id.* at 5–12. The Court further preliminarily concluded the proposed settlement was fair, reasonable, and adequate under the Rule 23(e) factors, the settlement complied with PAGA, and the Parties' proposed notice plan as the "best notice practicable under the circumstances[.]" *Id.* at 12–22, 24–25.

On August 22, 2024, Plaintiff filed the instant unopposed motion for final approval of class action settlement [ECF No. 49] and motion for attorneys' fees, costs, incentive award, and settlement administration expenses [ECF No. 50]. A final approval hearing was held on September 19, 2024. ECF No. 53. On September 26, 2024, Class Counsel filed a supplemental brief attaching their timesheets in this matter. ECF No. 54.

///

## II.    SETTLEMENT AGREEMENT TERMS

### A.    Proposed Settlement Class

The "Joint Stipulation of Class and PAGA Action Settlement and Release of Claims" ("Settlement Agreement," ECF No. 49-2 at 19–68) defines "Class Members" or "Settlement Class Members" as "all individuals who previously were employed by [Velocity] in California as non-exempt employees at any time during the Class Period." Settlement Agreement ¶ I.6. The "Class Period" is defined as the period from March 17, 2018 through the preliminary approval date of April 18, 2024. *Id.* ¶ I.7; ECF No. 48.

### B.    Proposed Monetary Relief

Under the Settlement Agreement, Defendants have agreed to pay a maximum gross settlement totaling $602,058. Settlement Agreement ¶ I.18. The following will be deducted from the gross settlement: (1) Settlement Administration Costs, not to exceed $9,260; (2) a Class Representative Service Award of up to $25,000; (3) attorneys' fees, not to exceed one-third of the maximum settlement amount, or $200,686; (4) Class Counsel costs, not to exceed $9,450; and (5) $20,000 as PAGA penalties, of which $15,000 (75%) will be paid to the Labor and Workforce Development Agency ("LWDA"), and $5,000 (25%) will be distributed on a *pro rata* basis to Class Members who worked during the PAGA Period. *Id.* ¶¶ III.15, 20–22, 25.[2] Velocity's share of payroll taxes will be paid separately from and in addition to the gross settlement amount. *Id.* ¶ III.15.

After deductions, the Settlement Agreement anticipates the net settlement amount to be $337,302. *Id.* Each of the 484 Class Members will receive a portion of the net settlement, calculated by dividing the net settlement amount by the total number of workweeks worked by all Class Members during the Class Period and then multiplying the workweek value worked by each Class Member. *Id.* ¶ III.17. Class Members who

---

[2]    The "PAGA Period" is defined as "the period from March 17, 2021" through the preliminary approval date of April 18, 2024. Settlement Agreement ¶ I.26.

worked during the PAGA period will receive a *pro rata* share of the PAGA payment calculated using a similar formula. *Id.* Class Members who do not opt out will be mailed a settlement payout. *Id.* ¶¶ III.16–III.17.

Class Counsel estimates that the settlement will yield an "average payout" of approximately $700 per Class Member. Huch Decl. ¶ 4. Class Members who worked the highest number of workweeks will receive over $2,000 each, with a maximum individual settlement award of $3,882.12 to an employee who worked throughout the entire class period. *Id.* There are 188 PAGA members who will be paid a portion of the PAGA settlement, with an average payout of $26.60. Declaration of Gillian McCreedy ("McCreedy Decl.," ECF No. 49-4) ¶ 17.

None of the settlement amount will revert to Defendants. Settlement Agreement ¶ III.15. If any settlement checks remain uncashed after 180 days of mailing, the amount will be paid to the California State Controller Unclaimed Property Fund. *Id.* ¶ III.19.

### C.    Release

Under the Settlement Agreement, Class Members agree to release their claims for:

> [A]ny and all causes of action, claims, demands, rights, and liability, alleged or that could have been alleged in the Complaint and letters previously submitted by Plaintiff to the LWDA on March 17, 2022 and August 1, 2022 based on the facts and allegations alleged therein including claims for violations of the California Labor Code and any other local, state, or federal law, statute, regulation or ordinance, including the Fair Labor Standards Act, through the Class Period. This Release specifically includes claims for any wages, statutory penalties, civil penalties, liquidated damages, interest, restitution, attorneys' fees or costs for the claims alleged in the Complaint including but not limited to claims for failure to pay minimum or overtime wages, failure to provide meal and rest periods or to pay meal and rest period premiums, failure to pay all wages due to discharged or quitting employees, failure to provide accurate itemized wage statements; claims under California Labor Code sections 201 to 204, 210, 218.5, 218.6, 226, 226.3, 226.7, 227.3, 246, 510, 512, 558, 1174, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 2698 et seq, 2802, 2810.3, and the Wage Orders promulgated thereunder, California

Business and Professions Code section 17200, et seq.; and claims for injunctive relief, punitive damages, penalties of any nature (including PAGA civil penalties and statutory penalties), interest, fees, and costs.

*Id.* ¶ III.1.a.

## III.    FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A.    Class Certification

The Court's "threshold task" prior to granting final approval "is to ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to class actions, "namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The Court must also determine whether "the action is maintainable under Rule 23(b)(1), (2), or (3)." *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 462 (9th Cir. 2000) (internal quotation marks omitted).

At the preliminary approval stage, the Court certified the following class under Rule 23(b)(3) for settlement purposes:

> [A]ll individuals who were employed by Defendant Velocity Transport LLC in California as non-exempt employees at any time during the period from March 17, 2018 through to the preliminary approval date.

ECF No. 48 at 25. The Parties have not set forth any new facts that would alter the Court's analysis. Accordingly, for the reasons stated in its preliminary approval order, the Court reaffirms its prior certification of the above class under Rule 23(b)(3) for settlement purposes only. *Id.* at 6–12.

### B.    Adequacy of Notice

"Adequate notice is critical to court approval of a class settlement[.]" *Hanlon*, 150 F.3d at 1025. Under Federal Rule of Civil Procedure 23(c)(2)(B), "[f]or any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice

that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Court previously appointed Simpluris, Inc. ("Simpluris") to act as the class administrator. ECF No. 48 at 25. In support of final approval, Plaintiff submits the declaration of Gillian McCreedy, a Project Manager at Simpluris. McCreedy Decl. ¶ 1. According to Mr. McCreedy, on April 26, 2024, Velocity's counsel provided Simpluris with a mailing list containing the names, most recent mailing addresses, social security numbers, and dates of employment for each Class Member during the Class Period. *Id.* ¶ 6. The list contained 484 Class Members. *Id.* The list was processed and updated utilizing the National Change of Address Database maintained by the U.S. Postal Service. *Id.* ¶ 7.

On May 30, 2024, the Court-approved Class Notice was mailed to all 484 Class Members. *Id.* ¶ 8. Of the notices mailed, 107 were returned. *Id.* ¶ 9. Of these, 13 were returned with a forwarding address. *Id.* An advanced skip trace was performed using Accurint on the remainder. *Id.* Simpluris was able to locate 90 updated addresses using these advanced address searches. *Id.* After Class Notices were mailed to these updated addresses, 14 were ultimately undeliverable. *Id.*

Having reviewed Mr. McCreedy's declaration, the Court concludes the notice provided in this case was the best practicable under the circumstances and adequate to satisfy the requirements of Rule 23.

## C.    Required Notices

### 1.    CAFA Notice

Under CAFA, "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement[.]" 28 U.S.C. § 1715(b). "An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the

appropriate State official are served [with notice]." *Id.* § 1715(d); *see California v. IntelliGender, LLC*, 771 F.3d 1169, 1173 (9th Cir. 2014) ("§ 1715 prohibits a court from ordering final approval of a proposed settlement until 90 days after the appropriate government officials were notified.").

Velocity provided a notice of settlement pursuant to CAFA on September 4, 2024. ECF No. 51. Although untimely under 28 U.S.C. § 1715(b), the Parties' late notice is not fatal to final approval. *See Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 973 (E.D. Cal. 2012) ("[N]umerous courts [have found] that late mailing of notices to state and federal officials under CAFA is not fatal to approval of settlements.") (collecting cases). "Instead, the critical question is whether state and federal government officials are allowed ninety days to object to the settlement or request to be heard." *Cavazos v. Salas Concrete Inc.*, No. 1:19-cv-00062-DAD-EPG, 2022 U.S. Dist. LEXIS 74367, at *3 n.1 (E.D. Cal. Apr. 22, 2022). Here, the Court finds the substance of the requirements—to provide federal and state officials sufficient notice and opportunity to be heard before the final approval order issues—has been satisfied here.

### 2.    PAGA Notice

Under PAGA, Class Counsel is required to provide notice of a proposed settlement to the LWDA "at the same time that it is submitted to the court." Cal. Lab. Code § 2699(s)(2). Class Counsel submitted the proposed Settlement Agreement to the LWDA on August 5, 2024. Huch Decl. ¶ 21.

### D.    Final Fairness Determination

### 1.    Fairness Factors

Federal Rule of Civil Procedure 23(e) provides "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The Rule "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate and reasonable." *Hanlon*, 150 F.3d at 1026. In making this determination, the Court is required to "evaluate the fairness of a settlement

as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–19 (9th Cir. 2012).

The Ninth Circuit has instructed that "[a]ssessing a settlement proposal requires the district court to balance a number of factors" including:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. The list is not intended to be exhaustive. *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Id.*

The 2018 amendments to Rule 23 provide further guidance as to what factors courts should consider when determining whether a settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

9

> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "The factors set forth in Fed. R. Civ. P. 23(e) distill the considerations historically used by federal courts to evaluate class action settlements." *Thompson v. NSC Techs., LLC*, No. 3:20-CV-00371-JO-MSB, 2023 U.S. Dist. LEXIS 56684, at *12 (S.D. Cal. Mar. 30, 2023). Nevertheless, the Advisory Committee Notes to Rule 23 explain that "[t]he goal of [the] amendment [was] not to displace any factor" that would have been relevant prior to the amendment. Fed. R. Civ. P. 23, Advisory Comm. Notes. Rather, the "goal" was to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* "Consideration of the factors the Ninth Circuit has customarily employed remains appropriate after the recent Rule 23 amendments." *Shay v. Apple Inc.*, No. 3:20-cv-1629-JO-BLM, 2024 U.S. Dist. LEXIS 48702, at *11 (S.D. Cal. Mar. 18, 2024). Where, as here, "the [P]arties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness[.]" *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019).

The Court begins with the Rule 23(e)(2) factors and then addresses the *Hanlon* factors.

### 2.    *Adequate Representation (Rule 23(e)(2)(A))*

The Court first considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Representation of a class is adequate under Rule 23(e)(2)(A) where named plaintiffs and class counsel have no conflicts of interest with other class members and have prosecuted the action vigorously on the class's behalf. *See Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023).

Here, there is no evidence of any conflict between Plaintiff, Class Counsel, and the rest of the class. Plaintiff was represented by Blanchard, Krasner & French and the Law

Office of David A. Huch, both of whom have extensive experience litigating class action matters. Huch Decl. ¶¶ 41–46; Declaration of David C. Hawkes ("Hawkes Decl.," ECF No. 49-3) ¶ 2. The case was actively litigated for over two years, where Class Counsel engaged in, among other things, responsive motion practice, informal and formal discovery, and extensive settlement negotiations. Huch. Decl. ¶ 48; Hawkes Decl. ¶ 4. Plaintiff suffered the same injuries as other Class Members resulting from Defendants' alleged conduct and his interests therefore align with the class. *See Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 167 (N.D. Cal. 2019) ("The named Plaintiffs were employed by Defendant during the class period and allegedly injured by the same course of conduct common to all class members; thus, Plaintiffs' interest in this litigation is aligned with that of the class."). Plaintiff was further actively engaged in this lawsuit, regularly communicating with counsel, attending the Early Neutral Evaluation on December 13, 2022, the full-day mediation on November 7, 2023, and reviewing the proposed settlement. Declaration of Francisco Lopez ("Lopez Decl.," ECF No. 50-2) ¶¶ 6–13.

For purposes of final approval, the Court concludes the class was adequately represented by Plaintiff and Class Counsel.

### 3.    Arms Length Negotiation (Rule 23(e)(2)(B))

The Court next considers whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Here, the settlement is the product of a full day negotiation between the Parties, guided by the neutral perspective of an experienced mediator. Huch Decl. ¶ 19. Settlement was reached after extensive formal and informal discovery had already been completed. *Id.* ¶¶ 15–18. Negotiations between the Parties were "contentious" and the case ultimately only resolved via the acceptance of a mediator's proposal. *Id.* ¶ 19.

The Court is satisfied the settlement "appears to be the product of serious, informed, non-collusive negotiations[.]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks omitted); *see also Lusk v. Five*

*Guys Enters. LLC*, No. 1:17-cv-00762-AWI-EPG, 2022 U.S. Dist. LEXIS 180722, at *23–24 (E.D. Cal. Sep. 30, 2022) ("The fact that the parties engaged in mediation and that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion."); *Loreto v. Gen. Dynamics Info. Tech., Inc.*, No. 3:19-cv-01366-GPC-MSB, 2021 U.S. Dist. LEXIS 138831, at *12 (S.D. Cal. July 26, 2021) (Rule 23(e)(2)(B) likely satisfied where settlement was "the result of an arm's length negotiation facilitated by an experienced mediator after the exchange of sufficient discovery[.]").

### 4.    Adequate Relief (Rule 23(e)(2)(C))

#### a.    Amount Offered

"The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Loreto*, 2021 U.S. Dist. LEXIS 87745, at *19; *see* Fed. R. Civ. P. 23, Advisory Comm. Notes ("The relief that the settlement is expected to provide to class members is a central concern."). "To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F. Supp. 2d at 1080.

Here, the settlement amount is reasonable when viewed in light of the potential recovery. Plaintiffs divide damages in this case into three categories: (1) failure to pay proper overtime rates of pay; (2) failure to provide meal and rest breaks; and (3) a derivative claim for waiting time penalties pursuant to Cal. Lab. Code §§ 201–203. ECF No. 49-1 at 22–24. Based on the analysis conducted by Class Counsel and Plaintiff's damages expert, Plaintiff estimated a maximum potential class-wide recovery of $2.4 million in this case, comprising: (1) $25,000 in projected overtime damages; (2) $544,645 in projected meal and rest break damages; and (3) $1.79 million in waiting time penalties. Huch Decl. ¶¶ 26–30. The Court has reviewed the methodology employed by Class Counsel and Plaintiff's damages expert in reaching these projected damages and determines they are reasonable.

///

The $602,058 settlement amount reached in this case represents approximately 25% of Plaintiff's estimated maximum potential recovery, before any deductions for fees, costs, or an incentive award. *Id.* ¶ 30. This percentage is within the range found reasonable by courts in other wage and hour class actions. *See Gagnier v. Siteone Landscape Supply LLC*, No. SACV 21-01834-CJC (DFMx), 2023 U.S. Dist. LEXIS 209911, at *22 (C.D. Cal. June 6, 2023) (finding settlement amount equaling 13% of maximum potential recovery to be reasonable); *Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 U.S. Dist. LEXIS 60114, at *14 (N.D. Cal. Apr. 26, 2013) (approving settlement amount representing 24% of modeled damage amount in wage and hour class action); *Glass v. UBS Fin. Servs.,* No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *13 (N.D. Cal. Jan. 26, 2007) (settlement of wage and hour class action for approximately 25% to 35% of amount of damages plaintiffs "could have hoped to prove at trial" held to be "reasonable in light of the uncertainties involved in litigation").

>   b.   *Costs, Risks, and Delay of Trial and Appeal (Fed. R. Civ. P. 23(e)(2)(C)(i))*

The Court also considers "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). Here, settlement in this case was reached only after over two years of litigation. *See* Docket. Defendants continue to "adamantly deny" all material allegations set forth in the SAC. Huch Decl. ¶ 13. In addition, Defendants raised numerous defenses to liability and class certification. *Id.* ¶¶ 32–37. As examples, Velocity produced evidence challenging liability, including written meal and rest break policies that arguably complied with California law and information demonstrating its employees had been provided devices requiring them to clock out and take breaks. *Id.* ¶ 34. In addition, the Amazon Defendants consistently contended throughout this litigation that they were not Plaintiff's joint employer and that the type of evidence Plaintiff was relying upon to establish this connection was insufficient. *Id.* ¶ 36. Despite this hurdle, Class Counsel acknowledges that because Velocity ceased doing business, it

would have been "critical" to prove the Amazon Defendants' joint employer status to prosecute the class-wide claims successfully. *Id.* ¶ 37.

Plaintiff also notes other litigation risks. Defendants maintained throughout the litigation that Plaintiffs and members of the proposed Class should be compelled to individual arbitration. Huch. Decl. ¶ 13. Indeed, Velocity filed an amended motion to compel arbitration before the Parties reached their settlement. ECF No. 29. Plaintiff states that at the time the mediator's proposal was accepted, state law on the issue of whether Plaintiff would have been subject to binding arbitration was "very much in doubt." ECF No. 49-1 at 21.

For these reasons, proceeding with this case would have presented very real risks for both Parties as to arbitrability and an unfavorable decision on the merits. In contrast, the Settlement offers the Parties and the class immediate and certain relief. This factor weighs in favor of approval. *See Fernandez v. Vict. Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 U.S. Dist. LEXIS 123546, at *18–19 (C.D. Cal. July 21, 2008) ("Because both parties faced extended, expensive future litigation, and because both faced the very real possibility that they would not prevail, this factor supports approval of the settlement.").

c.    *Method of Distributing Relief (Fed. R. Civ. P. 23(e)(2)(C)(ii))*

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335-GPC-MDD, 2020 U.S. Dist. LEXIS 16195, at *19 (S.D. Cal. Jan. 31, 2020) (internal quotation marks omitted).

Here, Class Members do not need to submit claims to be compensated. Instead, Class Members were identified through Velocity's employment records. McCreedy Decl. ¶ 6. Any Class Member who received a Class Notice and did not opt out will be mailed a settlement payout. Settlement Agreement ¶¶ III.16–III.17. The settlement is non-reversionary. *Id.* ¶ III.15. Uncashed checks (if any) will be paid to the California State

Controller Unclaimed Property Fund in the name of the Class Member. *Id.* ¶ III.19. Each Class Member has 180 days to cash his/her check. *Id.* "This method of distributing relief is 'simple and effective'" and weighs in favor of final approval. *Ranger v. Shared Imaging, LLC*, No. 2:20-cv-401-KJN, 2023 U.S. Dist. LEXIS 218813, at *20 (E.D. Cal. Dec. 8, 2023) (approving similar distribution plan); *Loreto*, 2021 U.S. Dist. LEXIS 87745, at *26–27 (same).

> ### d. Terms of Proposed Attorneys' Fee Award (Fed. R. Civ. P. 23(e)(2)(C)(iii))/Signs of Collusion

Under Federal Rule of Civil Procedure 23(e)(2)(C)(iii), "a court must examine whether the attorneys' fees arrangement shortchanges the class." *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021). In so doing, "courts must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *Id.*

One "inherent risk" of a class action settlement "is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee." *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks omitted). For these reasons, the Ninth Circuit has cautioned courts to be "particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. In *Bluetooth*, the Ninth Circuit identified three possible signs of collusion: (1) "when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" *Id.*

Based on the record before the Court, nothing suggests that the instant settlement was the product of collusion. The Settlement Agreement provides Class Counsel will not

seek fees greater than 33.33% of the gross settlement amount. Settlement Agreement ¶ III.21. Although a 33.33% award is higher than the 25% benchmark typically used by the Ninth Circuit, the amount requested is considerably lower than the 83.2% that was at issue in *Bluetooth*. *See Bluetooth*, 654 F.3d at 945 ("[W]e are concerned that the amount awarded was 83.2% of the total amount defendants were willing to spend to settle the case."). The Court further retains its discretion to award less than the 33.33% award requested.[3] Settlement Agreement ¶ III.21 ("This Settlement is not contingent upon the Court awarding Class Counsel any particular amount in attorneys' fees and costs.").

The Court does not see any other signs of collusion. The Settlement Agreement does not contain a "clear sailing" provision. Settlement Agreement ¶ III.21. The Settlement Agreement is also non-reversionary. *Id.* ¶ III.15. No portion of the settlement amount will revert to Defendants. This factor weighs in favor of approval.

### e.    Other Agreements (Fed. R. Civ. P. 23(e)(2)(C)(iv))

The Parties have not identified any other agreements made in connection with their settlement apart from the Settlement Agreement. This factor is neutral.

### 5.    Equitable Treatment (Rule 23(e)(2)(D))

Under Federal Rule of Civil Procedure Rule 23(e)(2)(D), the Court considers whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. Proc. 23, Advisory Comm. Notes.

The Settlement Agreement provides that payments will be distributed to Class Members on a *pro rata* basis accounting for the number of workweeks worked by each Class Member. Settlement Agreement ¶ III.16. The Court concludes this apportionment takes appropriate account of the differences between Class Members. *See Carlino v.*

---

[3]    The Court incorporates its discussion regarding attorneys' fees below.

*CHG Med. Staffing, Inc.*, No. 1:17-cv-01323-LHR-CDB, 2024 U.S. Dist. LEXIS 71473, at *33 (E.D. Cal. Apr. 18, 2024) (distributing net settlement amount, *pro rata*, based on number of workweeks is a "reasonable and impartial basis for allocating funds in a class wage and hour settlement"); *Grant v. T-Mobile United States, Inc.*, No. CV 21-2268-GW-JEMx, 2023 U.S. Dist. LEXIS 201217, at *19 (C.D. Cal. Oct. 3, 2023) (distributing "payments to the number of Work Weeks, *pro rata*, for purposes of the Wage & Hour Class's claims is an equitable method for treating the members of that Class."); *Gagnier*, 2023 U.S. Dist. LEXIS 209911, at *27 ("Individual settlement amounts are based on the *pro rata* share of workweeks that each individual class member was employed by Defendant, which is an appropriate proxy for the degree of harm that the individuals likely suffered due to Defendant's purported misconduct.").

As to the equities between Plaintiff, as the class representative, and the remainder of the class, for purposes of fairness, the Court retains its discretion to award less than the $25,000 requested.[4] Any amount requested by Plaintiff as an incentive award that is not granted returns to the net settlement amount and will be distributed to participating Class Members. Settlement Agreement ¶ III.20. For the above reasons, this factor weighs in favor of approval.

### 6. *Remaining Hanlon Factors*[5]

#### a. *Experience and Views of Counsel*

Class Counsel—Mr. Huch and Mr. Hawkes—submitted declarations detailing their extensive experience litigating class actions. Huch Decl. ¶¶ 41–46; Hawkes Decl. ¶ 2. In

---

[4]    The Court incorporates its discussion between regarding the incentive award below.

[5]    The Court has already addressed many of the *Hanlon* factors in its analysis of the Rule 23(e) factors above. *See Andrade-Heymsfield v. Nextfoods, Inc.*, No. 3:21-cv-01446-BTM-MSB, 2024 U.S. Dist. LEXIS 151063, at *8 (S.D. Cal. Apr. 8, 2024) (noting overlap between Rule 23 and *Hanlon* factors); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 U.S. Dist. LEXIS 121886, at *21–22 (N.D. Cal. July 22, 2019) (same).

Mr. Huch and Mr. Hawke's view, the settlement reached is fair, reasonable, and adequate. Huch. Decl. ¶ 55; Hawkes Decl. ¶ 13. This factor weighs in favor of the settlement.

### b. Governmental Participant

No government entity participated in this case. This factor is neutral.

### c. Reaction of Class Members

As of the date of the final approval hearing, no Class Member has objected or requested exclusion from the class. The lack of any objection or request for exclusion strongly favors approval. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (district court had discretion to find a "favorable reaction" to settlement where only 54 objections were received out of 376,301 putative class members); *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming class action settlement where 45 out of approximately 90,000 notified class members objected); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

### 7. Balancing the Factors

"Ultimately, the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974)). The court's inquiry is ultimately "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.*; *see also Hanlon*, 150 F.3d at 1027 (because a "[s]ettlement is the offspring of compromise, the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion").

Having considered and balanced the relevant factors, the Court concludes the settlement is fair, adequate, and reasonable.

## IV.    FINAL APPROVAL OF PAGA PENALTIES

### A.    PAGA Generally

A PAGA representative action is "a type of qui tam action in which a private plaintiff pursues a dispute between an employer and the [LWDA] on behalf of the state." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (internal quotation marks omitted). "PAGA authorizes an aggrieved employee to recover a 'civil penalty' that could have otherwise been 'assessed and collected by' [the LWDA]." *Magadia v. Wal-Mart Assocs.*, 999 F.3d 668, 675 (9th Cir. 2021) (citing Cal. Lab. Code § 2699(a)). "If successful, twenty-five percent of the civil penalties are distributed to the aggrieved employees, and the remaining seventy-five percent of the penalties go to [the] LWDA." *Porter v. Nabors Drilling USA, Ltd. P'ship*, 854 F.3d 1057, 1061 (9th Cir. 2017).

"[B]ecause a settlement of PAGA claims compromises a claim that could otherwise be brought by the state," courts must "review and approve any settlement of any civil action filed pursuant to [PAGA]." *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272, at *7 (N.D. Cal. Aug. 25, 2017). "No binding authority sets forth the proper standard of review for PAGA settlements; however, California district courts often apply a Rule 23-like standard, asking whether the settlement of the PAGA claims is fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes." *Hernandez v. Arthur J. Gallagher Serv. Co., Ltd. Liab. Co.*, No. 22-cv-01910-H-DEB, 2024 U.S. Dist. LEXIS 153062, at *24 (S.D. Cal. Aug. 26, 2024) (internal quotation marks omitted); *see Heid v. Cyracom Int'l, Inc.,* No. 22-cv-1445-MMA (KSC), 2024 U.S. Dist. LEXIS 156801, at *25 (S.D. Cal. Aug. 30, 2024) ("While PAGA requires a trial court to approve a PAGA settlement, district courts have noted there is no governing standard to review PAGA settlements.") (collecting cases).

**B.    Analysis**

The Settlement Agreement allocates $20,000 of the gross settlement to be paid as civil PAGA penalties. Settlement Agreement ¶ III.25. Pursuant to the California Labor, 75% or $15,000 will be paid to the LWDA, and 25% or $5,000 will be included in the net settlement amount and distributed to class members who worked during the PAGA period on a *pro rata* basis. *Id.*

Plaintiff estimates the maximum civil penalty potentially recoverable on Plaintiff's PAGA claim to range from $280,000 to $300,000. Huch Decl. ¶ 31. Class Counsel arrived at this estimate "after examining the sample of [payroll and time] records" Velocity provided "to determine the frequency of instances in which employees [earned] bonuses and incurred overtime hours during the same pay period, as well as rates of allegedly late, missed or short breaks." *Id.* The $20,000 allocated to PAGA penalties represents approximately 6-7% of the total estimated value of Plaintiff's PAGA claim. This is within the range of reasonableness accepted by courts. *See Almanzar v. Home Depot U.S.A., Inc.*, No. 2:20-cv-0699-KJN, 2023 U.S. Dist. LEXIS 115974, at *18 (E.D. Cal. July 6, 2023) ("Courts are generally skeptical of PAGA settlements that fall under 1% of the total value of a PAGA claim."); *Medina v. Evolve Mortg. Servs., LLC*, No. SACV 21-01338-CJC (JDEx), 2023 U.S. Dist. LEXIS 241627, at *30 (C.D. Cal. Apr. 3, 2023) (approving PAGA penalty representing about 4.7% of estimated recovery on PAGA claim); *McShan v. Hotel Valencia Corp.*, No. 19-cv-03316-LHK, 2021 U.S. Dist. LEXIS 69558, at *9 (N.D. Cal. Apr. 9, 2021) (approving PAGA penalty representing about 5% of estimated recovery on PAGA claim).

The Parties' PAGA allocation also represents approximately 3% of the gross settlement amount, which is also within the range of penalties approved by courts. *See Scott v. Blackstone Consulting, Inc.*, No. 21-cv-1470-MMA-KSC, 2024 U.S. Dist. LEXIS 13025, at *20–21 (S.D. Cal. Jan. 24, 2024) (approving PAGA penalty representing 5% of gross settlement amount); *Alcala v. Meyer Logistics, Inc.*, No. CV 17-7211 PSG (AGRx),

2019 U.S. Dist. LEXIS 166879, at *26 (C.D. Cal. June 17, 2019) (collecting cases where courts approved PAGA penalties within the zero to two percent range).

Finally, the proposed Settlement was further submitted to the LWDA on August 5, 2024. Huch Decl. ¶ 21. To date, no comment or objection has been received. This fact weighs in favor of approval. *Heid v. Cyracom Int'l, Inc.*, No. 22-cv-1445-MMA (KSC), 2024 U.S. Dist. LEXIS 156801, at *26 (S.D. Cal. Aug. 30, 2024) ("The Court finds it persuasive that the LWDA was permitted to file a response to the proposed Settlement and no comment or objection has been received.").

Considering the above, the Court concludes the Settlement Agreement's $20,000 PAGA penalty is fair, reasonable, and adequate in view of PAGA's public policy goals.

## V.    MOTION FOR ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARD

### A.    Attorney's Fees and Costs

#### 1.    Legal Standard

Federal Rule of Civil Procedure 23(h) permits a court to award reasonable attorney's fees "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth,* 654 F.3d at 941.

In a diversity action under CAFA, federal courts apply state law when determining both the right to fees and the method of calculating them. *See Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 571 (2005) ("CAFA confers federal diversity jurisdiction over class actions."); *Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating fees."); *Petersen v. CJ Am., Inc.*, No. 14-CV-2570 DMS JLB, 2016 U.S. Dist. LEXIS 140188, at *1 (S.D. Cal. Sep. 30, 2016) ("In diversity actions, 'state law governs both the right to recover attorney's fees and the computation of their amount.'") (internal quotation marks

omitted). Because California law governs Plaintiff's claims, it also governs the award of fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

California courts recognize "[t]wo primary methods of determining a reasonable attorney fee in class action litigation." *Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 489 (2016). "The percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery." *Id.* "The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Id.* (internal quotation marks omitted).

In common fund cases, like this one, "the district court has discretion . . . to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino*, 290 F.3d at 1047.[6] Courts review fee awards in common fund cases with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber stamp approval, even in the absence of objections, is improper.

*Id.* at 1052 (internal quotation marks and citation omitted).

Ultimately, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fla. ex rel. Butterworth v. Exxon Corp. (In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.)*, 109 F.3d 602, 607 (9th Cir. 1997).

///

---

[6]    "Under the common fund doctrine, a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (internal quotation marks omitted). Plaintiff does not dispute this is a common fund case. ECF No. 50-1 at 7.

2.    *Percentage of Fund Analysis*

The Court begins with a percentage of fund analysis. Under Ninth Circuit precedent, "[t]wenty-five percent is the 'benchmark' that district courts should award in common fund cases." *Principe v. Ukropina*, 47 F.3d 373, 379 (9th Cir. 1995). Here, Class Counsel seeks one-third of the $602,058 gross settlement amount, totaling $200,686, in fees. ECF No. 50-1 at 7. The Court must, therefore, determine whether it would be appropriate to depart from the Ninth Circuit's 25% benchmark.

A court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *Principe*, 47 F.3d at 379. The Ninth Circuit has identified several factors relevant in determining if the award is reasonable, including: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–50.

Here, while the results achieved by Class Counsel are certainly favorable, they are not "exceptional." Class Counsel achieved a settlement representing approximately 25% of Plaintiff's estimated maximum potential recovery. ECF No. 50-1 at 15–18. The settlement will yield an "average payout" of approximately $700 per class member, with Class Members who worked the highest number of workweeks receiving over $2,000 each, and a maximum individual settlement award of $3,882.12 to an employee who worked throughout the entire class period. Huch Decl. ¶ 4. Although the recovery to class members is positive, the recovery is not so remarkable to itself justify an upward departure. *See Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 983 (E.D. Cal. 2012) (recovery of $2,000 per class member in wage and hour class action was "not so exceptional" in it of itself to "justify an increase in the 25% benchmark."). There is also no indication that this case was particularly complicated or involved novel legal or factual issues. *See Vigil v. Hyatt Corp.*, No. 22-cv-00693-HSG, 2024 U.S. Dist. LEXIS 86110, at *20 (N.D. Cal. May 13, 2024) (risk of litigation factor did not justify upward departure where class counsel failed to show how risks plaintiffs would face "were

significant or unique as compared to those in similar straightforward wage and hour cases."); *Pedraza v. Pier 1 Imps. U.S. Inc.*, No. 8:16-cv-01447-JLS-DFM, 2018 U.S. Dist. LEXIS 103490, at *15 (C.D. Cal. June 19, 2018) ("In the absence of any identified novel or complex legal or factual issues, the Court does not find that Counsel's experience and discovery efforts justify an upward departure from the 25% benchmark.").

The Court acknowledges Class Counsel took this case on a pure contingency basis, devoting significant time and resources to a matter with no guarantee of compensation. Huch Decl. ¶ 40; Hawkes Decl. ¶ 8. Because of the resources invested, Class Counsel also had to forego other representation. *Id.* However, this risk of nonpayment is present in every case litigated on a contingency basis. *See Adoma*, 913 F. Supp. 2d at 983 (risk of nonpayment factor did not favor increase in fee award where the court could not "conclude that the risks exceeded those ordinarily faced by counsel who take cases on contingency."). Again, the fact that Class Counsel took the case on a contingency basis, standing alone, does not justify an upward departure from the benchmark. *See Rodriguez v. El Toro Med. Inv'rs Ltd. P'ship*, No. 8:16-cv-00059-JLS-KES, 2018 U.S. Dist. LEXIS 106850, at *17 (C.D. Cal. June 26, 2018) (collecting cases).

Nevertheless, the Court finds that the relatively small size of the common fund in this case supports an upward adjustment. Cases with relatively small funds, *i.e.* under $10 million, will "often result in fees above 25%." *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008); *see also Heid v. Cyracom Int'l, Inc.*, No. 22-cv-1445-MMA (KSC), 2024 U.S. Dist. LEXIS 156801, at *30 (S.D. Cal. Aug. 30, 2024) ("[O]ne-third the common fund is in line with California precedent and similar wage and hour cases."); *Yanez v. HL Welding, Inc.*, No. 20cv1789-MDD, 2022 U.S. Dist. LEXIS 46169, at *34 (S.D. Cal. Mar. 15, 2022) ("The 33.33% award requested in this case is commensurate with percentage-of-the-fund awards made in other wage and hour class actions.") (collecting cases); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 U.S. Dist. LEXIS 86920, at *17 (C.D. Cal. July 27, 2010) ("[A] review of California cases in

other districts reveals that courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million.") (collecting cases). Here, the common fund is even smaller—just over $600,000.

### 3. Lodestar Cross Check

The Court next turns to a calculation of the lodestar. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. Class Counsel submitted a lodestar calculation of $325,793 based on 529.4 hours of work:

| Timekeeper | Rate Requested | Total Hours | Lodestar |
|---|---|---|---|
| David C. Hawkes | $585 | 281.8 | $164,853 |
| David A. Huch | $650 | 247.6 | $160,940 |
| Totals | | 529.4 | $325,793 |

ECF No. 54 at 2; 54-1 ¶ 4; 54-2 ¶ 2.

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, Mr. Huch's and Mr. Hawkes's hourly rates are commensurate with rates found to be reasonable in this District for attorneys of similar experience levels. *Dexter's LLC v. Gruma Corp.*, No. 23-cv-212-MMA-AHG, 2023 U.S. Dist. LEXIS 226093, at *25 (S.D. Cal. Dec. 19, 2023) ("[C]ourts in this District have awarded hourly rates for

work performed in civil cases by attorneys with significant experience anywhere in range of $550 per hour to more than $1000 per hour.") (collecting cases); *see also Scott v. Blackstone Consulting, Inc.*, No. 21-cv-1470-MMA-KSC, 2024 U.S. Dist. LEXIS 13025, at *23 (S.D. Cal. Jan. 24, 2024) (approving requested hourly rates ranging from $500 to $925 in wage and hour class action).

Class Counsel represents they have expended 529.4 hours litigating this action since the original action was filed on March 17, 2022. ECF No. 54 at 2. In support of their request, Class Counsel additionally submitted supplemental briefing that included billing timesheets. ECF Nos. 54-1 at 4–6; 54-2 at 4–41. The Court has reviewed the timesheets and determines that, in general, they show reasonably billed time for the purposes of the lodestar cross-check.

Finally, because Class Counsel is requesting attorneys' fees lower than their lodestar, Class Counsel's request translates essentially to a negative multiplier. "This negative multiplier suggests that the fee request is reasonable." *Smith v. Keurig Green Mt., Inc.*, No. 18-cv-06690-HSG, 2023 U.S. Dist. LEXIS 32327, at *28–29 (N.D. Cal. Feb. 27, 2023); *see also Wong v. Arlo Techs.*, No. 5:19-cv-00372-BLF, 2021 U.S. Dist. LEXIS 58514, at *35 (N.D. Cal. Mar. 25, 2021) ("[A] multiplier below 1.0 is below the range typically awarded by courts and is presumptively reasonable."); *Covillo v. Specialty's Café*, No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, at *24 (N.D. Cal. Mar. 6, 2014) ("Plaintiffs' requested fee award is approximately 65% of the lodestar, which means that the requested fee award results in a so-called negative multiplier, suggesting that the percentage of the fund is reasonable and fair.").

In light of the size of the common fund in this case, the timesheets submitted, and Class Counsel's fees request being lower than the lodestar, the Court does not find this to be a case where Class Counsel's requested award would "yield windfall profits for class counsel in light of the hours spent on the case[.]" *Bluetooth*, 654 F.3d at 942. The amount of fees requested is reasonable.

///

### B.    Costs

Attorneys are entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks omitted). Here, Class Counsel requests costs in the amount of $8,215.55 for "filing fees, mediation fees, service costs, expert expenses, and other necessary litigation expenses." Hawks Decl. ⁋ 8. The Court determines that the request for costs is reasonable in this case.

### C.    Incentive Award

The Court turns to named Plaintiff's request for an incentive award in the amount of $25,000. ECF No. 50-1 at 20; Settlement Agreement ¶¶ III.15, III.20. Although "incentive awards are fairly typical in class action cases," they are discretionary. *Rodriguez*, 563 F.3d at 958. "Generally, when a person joins in bringing an action as a class action he has disclaimed any right to a preferred position in the settlement." *Staton*, 327 F.3d at 967 (internal quotation marks omitted). The purpose of incentive awards, therefore, is "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

Named Plaintiff Mr. Lopez attests he has spent at least 73.5 hours prosecuting this case, performing tasks that include: (1) gathering documentation and otherwise assisting in investigating the claims; (2) participating in meetings with his attorneys; (3) assisting with formal and informal discovery; (4) attending the Early Neutral Evaluation on December 13, 2022; (4) attending the full-day mediation on November 7, 2023; and (5) carefully reviewing the proposed settlement. Lopez Decl. ¶¶ 7–12. Mr. Lopez further declares he believes he undertook a "significant risk" to himself and his career by suing

his former employer. *Id.* ¶ 19. Since filing suit, Mr. Lopez states that he has had "significant difficulties finding employment in the delivery industry." *Id.*

While the Court acknowledges that Mr. Lopez invested significant time and energy in this lawsuit and took on risks to his professional reputation, the proposed award is still on the high end of incentive awards. *See Charalambous v. Liberty Mut. Ins. Co.*, No. 22-cv-00216-EMC (EMC), 2024 U.S. Dist. LEXIS 46383, at *6 (N.D. Cal. Mar. 15, 2024) ("[A]wards of $10,000 to $25,000 are considered high."). Class Counsel estimates the average recovery for each class member to be approximately $700. Huch Decl. ¶ 4. The proposed incentive award here would be approximately 35 times that amount. This is "disproportionate to the average class member's recovery[.]" *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014) (holding that $15,000 incentive award was unwarranted where it was "far greater than the average payment to a class member"); *see also Nangle v. Penske Logistics, LLC*, No. 3:11-CV-00807-CAB-(BLM), 2017 U.S. Dist. LEXIS 93315, at *22 (S.D. Cal. June 16, 2017) (awarding class representative over twenty times more than what average class member would receive was excessive). Plaintiff's proposed incentive award of $25,000 for 73.5 hours of work is also equivalent to approximately $340 per hour for his assistance in litigating this case. This is a high hourly rate. *See Diaz v. UPS*, No. 1:22-cv-00246-CDB, 2023 U.S. Dist. LEXIS 221935, at *59–60 (E.D. Cal. Dec. 12, 2023) (holding that hourly rate of $162.50 as an incentive award "appear[s] excessive").

For these reasons, the Court determines it is appropriate to reduce Plaintiff's incentive award to $10,000.

### D.     Settlement Administration Expenses

Finally, the Court turns to Class Counsel's request to approve $9,620 in settlement administration costs. ECF No. 50-1 at 23. The request is supported by Mr. McCreedy's declaration, which details the work Simpluris has undertaken so far and the work it expects to perform in the future. McCreedy Decl. ¶¶ 3–9, 18. No objections have been made to these expenses. The Court concludes the request is reasonable.

## VI.    CONCLUSION

In accordance with the foregoing, the court **GRANTS** Plaintiff's final approval motion [ECF No. 49] and **GRANTS AS MODIFIED** Plaintiff's motion for attorneys' fees, costs, an incentive award, and settlement administration expenses [ECF No. 50].

1.     The Parties are **DIRECTED** to implement the Settlement Agreement according to its terms and conditions.

2.     The Court **APPROVES** Class Counsel's request for an award of attorneys' fees in the amount of **$200,686** and costs in the amount of **$8,215.55**.

3.     The Court **APPROVES AS MODIFIED** an incentive award to Plaintiff Francisco Lopez in the amount of **$10,000**.

4.     The Court **APPROVES** the Settlement Administration costs in the amount of **$9,620**.

5.     The Court retains continuing jurisdiction over this settlement solely for the purposes of enforcing the agreement, addressing settlement administration matters, and addressing such post-judgment matters as may be appropriate under Court rules and applicable law.

6.     Judgment is entered on the terms set forth above. The Clerk of Court is **DIRECTED** to close the case.

**IT IS SO ORDERED.**

Dated:  December 3, 2024

_____
Hon. Robert S. Huie
United States District Judge

22-cv-1414-RSH-KSC